IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MORRIS RUCKER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:21-cv-00555 ) Judge Trauger |
| JIM PURVIANCE, et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Morris Rucker, an inmate at the Northwest Correctional Complex in Tiptonville, Tennessee, has filed a pro se complaint for violation of civil rights under 42 U.S.C. § 1983. (Doc. No. 1.) After initially seeking leave to proceed in forma pauperis (Doc. No. 8), the plaintiff subsequently paid the full filing fee. (Doc. No. 9.) In light of his payment of the filing fee, the plaintiff's application for leave to proceed in forma pauperis (Doc. No. 8) will be denied as moot in a separate order.

The case is now before the court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A and 42 U.S.C. § 1997e.

**I.      Initial Review of the Complaint**

    **A.      PLRA Screening Standard**

Pursuant to 28 U.S.C. § 1915A, the court must conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and must dismiss the complaint or any portion thereof if it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. This initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the court must view the complaint in the light most favorable to the plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

  **B.** **Section 1983 Standard**

The plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, the plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was

2

caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations and Claims

The Complaint names as defendants the members of the Tennessee Board of Parole, its Executive Director, the State of Tennessee, and other executive officials with offices in Nashville, including Governor Bill Lee and Tennessee Department of Correction (TDOC) Commissioner Tony Parker. The plaintiff seeks declaratory relief, an award of compensatory and punitive damages, and the injunctive relief of immediate release from prison based on his allegedly unconstitutional denial of parole after more than three decades of incarceration.

The plaintiff alleges that he has been incarcerated for over 36 years as a result of his 1983 conviction for the "non-homicide offense" of "assault with intent to commit murder," and that at each of his three parole hearings during that time, family members of the victim of a prior, juvenile crime—which the plaintiff committed over 45 years ago—have opposed his release on parole.[1] (Doc. No. 1 at 6, 7–9.) The plaintiff asserts that the statements given by these relatives of the victim of the crime he committed as a juvenile are factually inaccurate (including the victim's daughter's statement that he had been out of prison for only 17 days when he committed the offenses of conviction, when in fact he had been out for over a year and one-half), and that, "when there [is]

---

[1] The court takes judicial notice of the description of the plaintiff's juvenile and adult offenses in the decision of the Tennessee Court of Criminal Appeals on direct appeal from his adult conviction, *State v. Rucker*, 712 S.W.2d 482 (Tenn. Crim. App. 1986). *See United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (taking judicial notice pursuant to Fed. R. Evid. 201(b) of adjudicative facts from record of state court criminal proceedings, including court order). The Court of Criminal Appeals recited that the plaintiff "was convicted of assault with intent to commit murder in the first degree with bodily injury, robbery accomplished with the use of a deadly weapon[,] and a second count of assault with intent to commit murder in the first degree, but without bodily injury" based on his actions on September 15, 1983. *Rucker*, 712 S.W.2d at 483. That court further found that "the [plaintiff] was on parole for murder in the second degree at the time he committed these [adult] offenses," in which "he fired a bullet into the head" of a victim "at point blank range" and "later fired three shots at the police officer who pursued him." *Id.* at 485.

3

a juvenile offense and victim-related opposition [to release on parole], parolees serve longer sentences arbitrarily." (*Id.* at 10.) He alleges that, while parole has been granted to other inmates who have committed more serious crimes (including first-degree murder), he was denied parole in 2016 and 2020 based on the seriousness of the offense of conviction, despite being "an honorable prisoner" who has completed many institutional programs to better himself while incarcerated. (*Id.* at 10–12, 14.) He asserts that, "if the TN [Parole] Board had the option or discretion to not deny . . . based on opposition they likely would not have denied Plaintiff's parole." (*Id.* at 8.) But because of a change in parole procedures from the time of the plaintiff's crimes in 1983, when the Board in its discretion could choose to consider victim statements, to the present, when the Board *must* receive and consider victim statements,[2] the plaintiff claims that he has suffered from retroactive modification of the requirements for parole eligibility that violates the Ex Post Facto Clause. (*Id.* at 5–6.) He further claims that "similarly situated inmates who don't have opposition [from] family members opposing parole [based on] crimes committed as [a] juvenile" and who do not have a learning disability as the plaintiff does are treated more favorably that he, and that this disparate treatment reflects purposeful discrimination against the plaintiff that violates his rights under the Equal Protection Clause. (*Id.* at 9, 11.)

The plaintiff additionally alleges that the Board of Parole is overworked and that large caseloads "make [for] hasty and uninformed parole decisions." (*Id.* at 12.) He complains of the hearing procedures followed by the Board, the standards applicable to parole determinations, and the Board's lack of accountability to any appellate body for its decisions so long as state law is not violated (*id.* at 12–14, 17–18), alleging that this combination produces the following results:

---

[2] *See* Tenn. Code Ann. § 40-28-504(a) (effective Jan. 1, 1994) (stating that the parole board "shall . . . consider victim impact statements"); *York v. Tennessee Bd. of Parole*, 502 S.W.3d 783, 792 (Tenn. Ct. App. 2016) (recounting history of Tennessee statutory and constitutional changes guaranteeing "victims or their families, if the victim is deceased, . . . the right to attend and be heard at parole hearings").

> [T]he Board of Parole systematically fails to properly consider the age, rehabilitation, institutional record, programs completed, the inmate's past use of narcotics, or past habitual and excessive use of alcohol, prediction guideline assessment system of prisoner's eligib[ility] for parole and in some instances the board members solely focus[ ] exclusively on the nature of the prisoner's crime in making parole decisions. The Board retires the case and allows testimony outside the record and denies the prisoner due process. The Board then refuses to give all the reasons for being denied parole and simply states "seriousness of the offense."

(*Id.* at 15.) The plaintiff claims that these actions and inactions violate state statutory law, deny parole-eligible inmates due process, and amount to deliberate indifference to the rights of those inmates. (*Id.* at 19.) He claims to have "suffered physical injury, loss of income, and severe mental anguish" because of his parole denials (*id.* at 20–26), entitling him to compensatory and punitive damages as well as an order for his immediate release. (*Id.* at 27–28.)

### D. Analysis

As an initial matter, much of the relief that the plaintiff requests is unavailable to him. It is well settled that a request to be released from confinement is not cognizable in an action under Section 1983, as habeas corpus provides the exclusive remedy for challenges to confinement. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). "[A] state prisoner's challenge to the fact or duration of his confinement, based, as here, upon the alleged unconstitutionality of state administrative action . . . is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). The plaintiff is therefore not entitled to the injunctive relief of immediate release from prison.

Nor is the plaintiff entitled to the compensatory and punitive damages he seeks. He sues the State of Tennessee and multiple officials who are employed either by the State or by a state agency such as the Board of Parole or TDOC. *See Whipple v. Tennessee Bd. of Paroles*, No. 1:17-

5

Case 3:21-cv-00555   Document 10   Filed 02/09/22   Page 5 of 17 PageID #: 78

CV-148-RLJ-SKL, 2018 WL 1387066, at *3 (E.D. Tenn. Mar. 19, 2018), *aff'd*, No. 18-5390, 2019 WL 1804845 (6th Cir. Jan. 3, 2019) ("Defendant Parole Board is an agency of the State of Tennessee and the remaining Defendants are employees of that agency and other State of Tennessee agencies, such as the TDOC[.]"). In a suit for damages, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In *Will*, the Supreme Court stated: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* In addition to the inapplicability of Section 1983 for these purposes, "the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities." *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (citing *Will*, 491 U.S. at 66). As a result, the complaint fails to state a colorable claim for damages under Section 1983 against the State or any defendant in his or her official capacity.[3]

Moreover, the plaintiff's request for damages against the defendants in their individual capacities due to their denial of his application for parole is barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that an action for damages for "harm caused by actions whose unlawfulness would render a state conviction or sentence invalid" is not cognizable unless the plaintiff can show that his conviction has been "reversed on direct appeal,

---

[3] The complaint does not designate the capacity in which Governor Lee and Commissioner Parker are sued, unlike the other named defendants who are sued in both their individual and official capacities. (*See* Doc. No. 1 at 2–4.) "Generally, plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities," *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999) (citations omitted), unless the face of the complaint indicates that damages are sought from the defendants directly, thus putting them on notice "of the potential for payment of damages individually." *Wells*, 891 F.2d at 593. This general rule is appropriately applied in the instant case to deem Lee and Parker sued in their official capacities, as the complaint does not attribute to either defendant any direct involvement in or responsibility for the parole decisions at issue here.

6

expunged by executive order, declared invalid by a state [court], or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87, 489. *Heck*'s "'favorable termination' requirement is necessary to prevent inmates from doing indirectly through damages actions what they could not do directly by seeking injunctive relief—challenge the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute." *Nelson v. Campbell*, 541 U.S. 637, 646–47 (2004). "The *Heck* doctrine applies to a claim challenging the denial of parole." *Whipple*, 2018 WL 1387066, at *4 (citing *Noel v. Grzesiak*, 96 F. App'x 353, 354 (6th Cir. 2004) ("*Heck* 'applies to proceedings that call into question the fact or duration of parole or probation.'"); *see also Bell v. Ohio Adult Parole Auth.*, 23 F. App'x 478, 479 (6th Cir. 2001) (finding that, under *Heck*, state inmate's challenge to the denial of parole is not cognizable in a § 1983 proceeding unless the parole denial was previously declared invalid, "since a ruling in his favor would undermine the validity of his continued confinement") (citing cases). Because the plaintiff has not shown that his parole denial has been invalidated, he is barred by *Heck* from claiming damages resulting from that denial, such as the "physical injury, loss of income, and severe mental anguish" he allegedly suffered as a consequence of the defendants' actions. (Doc. No. 1 at 20.)

Finally, even if the plaintiff's claim to damages were not otherwise barred, "parole board members enjoy absolute immunity for actions taken in connection with determining whether to grant or deny parole." *Boyd v. Staggs*, No. 1:19-cv-00007, 2019 WL 295087, at *3 (M.D. Tenn. Jan. 23, 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)).

The court now turns to the plaintiff's request for declaratory relief related to the standards applied in deciding his case for parole, and to the specific constitutional violations he claims.

### 1. Ex Post Facto Claim

In his Complaint, the plaintiff refers the court to this district's recent consideration of another case that also involved an ex post facto claim based on the denial of parole after mandatory consideration of opposition witness statements. In *Swatzell v. Tennessee Board of Parole*, the PLRA screening of the pro se complaint yielded the following statement of the law applicable to such a claim:

> As the Supreme Court has explained, the Ex Post Facto Clause ensures that "[l]egislatures may not retroactively alter the definitions of crimes or increase the punishment for criminal acts." [*Collins v. Youngblood*, 497 U.S. 37, 43 (1990)]. "Parole eligibility is part of the law annexed to an offense when committed; therefore legislative action which constricts parole eligibility by modifying requirements for such eligibility may violate the ex post facto clause." *Ritchie v. Tenn. Bd. of Prob. and Parole*, No. 1:10-CV-203, 2012 WL 222923, at *3 (E.D. Tenn. Jan. 25, 2012) (citing *Weaver v. Graham*, 450 U.S. 24, 32-33 (1981)). If, by its own terms, the challenged statute does not reveal a significant risk of enlarging the punishment, the prisoner must show that, as applied to his own sentencing, the statute created such a risk. *Garner v. Jones*, 529 U.S. 244, 255 (2000). . . .
>
> "[N]ot every change in the law raises ex post facto concerns." *Snodgrass v. Robinson*, 512 F.3d 999, 1002 (8th Cir. 2008). The issue is not "on whether a legislative change produces some ambiguous sort of disadvantage . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." [*Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995)] (internal quotation marks omitted); *see also Michael v. Ghee*, 498 F.3d 372, 384 (6th Cir. 2007) ("The relevant inquiry . . . then, is whether retroactive application of the 1998 Ohio Guidelines creates a sufficient risk of increasing the measure of punishment attached to the covered crimes.") (citing *Garner*, 529 U.S. at 250; *Dyer* [*v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006)). A court considering such a challenge must compare the parole statutes in effect at the time of the commission of the covered crime with the retrospectively-applied version of the statute, *Foster v. Booker*, 595 F.3d 353, 362 (6th Cir. 2010), to determine whether the practical impact of the change in the parole rule poses a significant risk of enlarging the amount of time a prisoner actually serves. *Michael*, 498 F.3d at 383 (citing *Garner*, 529 U.S. at 255).
>
> . . .
>
> It is true that Plaintiff does not have an inherent constitutionally created right to parole. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). And, the Tennessee parole scheme does not create an expectation that parole will be granted that is

sufficient to trigger a constitutionally protected liberty interest. *Wright v. Trammell*, 810 F.2d 589, 590–91 (6th Cir. 1987). Nevertheless, parole provisions that alter the level of board discretion, as these appear to do, may rise to the magnitude of an ex post facto violation. *See United States v. Duane*, 533 F.3d 441, 447 (6th Cir. 2008) ("'the [Supreme Court has] made clear that guidelines that affect discretion, rather than mandate outcomes, are nevertheless subject to ex post facto scrutiny'") (quoting *Michael*, 498 F.3d at 382; *Garner*, 529 U.S. at 253)[.]

*Swatzell*, No. 3:18-cv-01336, 2019 WL 1533445, at *2–4 (M.D. Tenn. Apr. 9, 2019).

In *Swatzell*, as here, the plaintiff did not allege that the definition of his crimes was altered by the change in Tennessee law establishing the right of victims to have their statements considered in parole proceedings, but that the change "had the practical effect of enlarging his period of incarceration." *Id.* at *3. Swatzell's ex post facto claim was permitted to proceed for further development, based on the facts that he had no criminal record prior to his commission of homicide at the age of 16 and had been incarcerated for over thirty years, during which time he was a "model inmate" who "never received a single disciplinary report" but still could not overcome the victim opposition to his parole applications. *Id.* at *2, 4. Swatzell's allegations survived comparison to the circumstances before the Sixth Circuit in *Seagroves v. Tennessee Board of Probation & Parole*, 86 F. App'x 45 (6th Cir. 2003), where the inmate likewise claimed an effective increase of his prison term from the application of an amended parole statute, but the claim was dismissed for the following reasons:

> [G]iven the seriousness of Seagroves's crimes and the fact that Seagroves committed the triple murders and the assault with intent to commit murder less than one week after being paroled for his previous crimes, the likelihood of Seagroves's release under either statute is so remote as to create only "the most speculative and attenuated possibility of increasing" Seagroves's punishment. The statutory changes, therefore, do not create a "significant risk of increasing the measure of punishment attached to the covered crimes" so as to violate the Ex Post Facto Clause.

*Id.* at 48 (quoting *Morales*, 514 U.S. at 509). In *Swatzell*, the inmate's ex post facto claim was allowed to proceed past initial review because his allegations demonstrated that, "[u]nlike Mr.

9

Seagroves, Plaintiff's likelihood of release on parole for showing rehabilitation is far from the most speculative and attenuated." 2019 WL 1533445, at *4 (internal quotation marks omitted).[4]

The case before this court is more akin to *Seagroves* than to *Swatzell*. Analogizing to *Swatzell*, the plaintiff complains of the continued opposition to his release by family members of the victim of a crime he committed as a juvenile, arguing that "juvenile convictions should not result in life-long convictions because of a lack of brain development," and that his "chances of release have become remote instead of meaningful and realistic" because of "[a] crime committed over forty-five years ago." (Doc. No. 1 at 8–9.) However, the plaintiff is not serving a sentence based solely on his juvenile crime, as is Mr. Swatzell, but one that was imposed following crimes he committed in 1983, when he was 26 years old.[5] Moreover, the plaintiff committed those serious violent crimes *while he was on parole* for the second-degree murder he committed as a juvenile. *See Rucker*, 712 S.W.2d at 485. Under these circumstances, the plaintiff cannot plausibly claim that, as applied to him—a "dangerous offender" sentenced to consecutive prison terms, *id.*—the statutory change to require rather than permit consideration of victim statements created a significant risk of increased punishment. *See also York*, 502 S.W.2d at 793 (conducting analysis of ex post facto claim under federal law and finding that changes in Tennessee law guaranteeing victims or their families the right to be heard at parole hearings are "procedural" changes informing the Board's exercise of discretion, which "have no impact on the standards for determining suitability for parole" and thus do not pose a significant risk of increased punishment). Rather, as

---

[4] Following discovery, Swatzell abandoned his claim that the change to mandate consideration of victim impact statements in parole proceedings violated his ex post facto rights, choosing instead to focus on a different statutory change as the basis for his ex post facto claim. (*See* Case No. 3:18-cv-01336, Doc. No. 94 at 21 n.7; Doc. No. 100 at 24–25.) The defendants' summary judgment motion was subsequently granted and all Swatzell's claims were dismissed on January 21, 2022. (*See id.*, Doc. Nos. 120, 121.)

[5] The record reveals that the plaintiff was born on July 3, 1957. (*See* Doc. No. 2 at 2.)

10

Case 3:21-cv-00555 Document 10 Filed 02/09/22 Page 10 of 17 PageID #: 83

in *Seagroves*, the change in the law here created at most a speculative possibility of increasing the plaintiff's punishment, despite his bald assertion that the Board "likely would not have denied [him] parole" under the prior regime. (Doc. No. 1 at 8.)

In short, even liberally construing the complaint in favor of the plaintiff, the court cannot reasonably infer from his allegations that the Board would be at all likely to grant him parole if it were not bound under current law to consider the statements of his victim's family members, but rather retained the discretion to do so under prior law. Accordingly, the plaintiff fails to state a colorable ex post facto claim.

### 2. Equal Protection Claim

The plaintiff claims that his right to equal protection of the laws has been violated "without any rational basis because Plaintiff's being denied parole due to a juvenile offense and because there is victim opposition to Plaintiff's parole from that juvenile offense," while similarly situated inmates "who have not served as much time and who have committed worse crimes" have been paroled. (Doc. No. 1 at 9–10.) However, he also alleges that the Board's "policies, practices and political dynamics have led the board to deny release to a majority of parole-eligib[le] offenders" (*id.* at 12), often based solely on the "seriousness of the offense." (*Id.* at 15.) While the plaintiff purports to "substantiate that similarly situated inmates are receiving more favorable treatment" than he is (*id.* at 9), the four other inmates mentioned in the Complaint include two who were granted parole and two who were denied parole. The Complaint identifies "George Hardin and Douglas Harville, just two of many inmates, convicted of a serious crime (murder), which were granted a parole review, and had multiple disciplinary infractions, including drugs and they were granted parole." (*Id.* at 14.) It also cites to "William Ledford [who] has an exceptional institutional and disciplinary record," "had victim support for parole[,] and even had the Board Chairman's

11

vote" for release, "[y]et, the rest of the Board denied parole stating solely 'seriousness of the offense' and scheduled his next hearing four (4) years into the future." (*Id.*) Finally, the Complaint cites the case of "J Y Sepulveda, one of many inmates" who was denied parole despite excellent qualifications because "Board members, who were not present, voted using . . . inaccurate information." (*Id.* at 16–17.)

"The Equal Protection Clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Shabazz v. Schofield*, No. 3:13-cv-00091, 2013 WL 704408, at *19 (M.D. Tenn. Feb. 26, 2013) (quoting U.S. Const., amend. XIV). A plaintiff states a colorable equal protection claim by alleging that the state is "mak[ing] distinctions that 1) burden a fundamental right; 2) target a suspect class; or 3) intentionally treat one individual differently from others similarly situated without any rational basis." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 App'x 826, 836 (6th Cir. 2009) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)).

The plaintiff asserts his claim under the third category above. He alleges that, without any rational basis for the disparity, he is intentionally treated differently than other inmates eligible for parole because of his conviction of a juvenile offense and because there is victim opposition to his parole. He "proclaims that similarly situated inmates who don't have opposition family members opposing parole for crimes committed as [a] juvenile" are "receiving more favorable treatment due to purposeful discrimination against [him]." (Doc. No. 1 at 9.) However, for other inmates to be considered similarly situated for these purposes, the plaintiff must allege similarity "in all relevant aspects of the parole decision." *Clayborn v. Tenn.*, No. 11-2137, 2013 WL 530555, at *5 (W.D. Tenn. Feb. 11, 2013) (citation omitted); *see also Drumbarger v. Crosby*, No. 3:11-CV-0684, 2014

12

WL 5846371, at *13 (M.D. Tenn. Nov. 12, 2014) (on dispositive motion review, finding that plaintiff had not shown that the two inmates to whom he referred were similarly situated in all relevant aspects and, as such, plaintiff could not use their paroles to support his own equal protection claim).

Although the plaintiff asserts that many inmates have received more favorable treatment than he, and the Complaint identifies two such inmates, the only information offered about these paroled inmates' crimes of conviction or criminal histories is that they were "convicted of a serious crime (murder)." (Doc. No. 1 at 14.) Even under the favorable construction afforded to pro se litigants, this allegation is plainly insufficient to establish a colorable claim that inmates similarly situated "in all relevant aspects of the parole decision" received more favorable treatment than the plaintiff, whose criminal history includes serious crimes committed while on parole following a prior murder conviction. *See Lennon v. Louisiana State Parole Bd.*, No. CIV.A. 11-0486-JJB, 2012 WL 528178, at *3 (M.D. La. Jan. 24, 2012), *report and recommendation adopted*, No. CIV.A. 11-486-JJB-CN, 2012 WL 528176 (M.D. La. Feb. 16, 2012) (dismissing equal protection claim at initial screening because plaintiff failed to allege that comparators' "criminal records and offenses are sufficiently similar to his own"). Furthermore, the plaintiff undercuts his equal protection claim by identifying two other comparators who, like the plaintiff, were denied parole—including one who was denied despite victim *support* for the inmate's release—in support of a claim that the Board operates unconstitutionally because it violates applicable state laws and policies. (*See* Doc. No. 1 at 14–17.)

Although the element of a similarly situated comparator is difficult to establish in the parole context, given the wide variance in criminal history and institutional records among applicants, *see Lennon*, 2012 WL 528178, at *3 (noting that parole applicants will "rarely be 'similarly

13

Case 3:21-cv-00555 Document 10 Filed 02/09/22 Page 13 of 17 PageID #: 86

situated'" and that disparate treatment is to be expected because each prisoner's case involves unique circumstances) (citation omitted), it is nonetheless required in order for an equal protection claim not based on the burdening of a fundamental right or the targeting of a suspect class to get off the ground. The plaintiff's failure to identify any similarly situated comparator who was intentionally treated differently without any rational basis for the difference justifies the dismissal of this claim as conclusory. *See Palmer v. Granholm*, No. 1:06-CV-301, 2006 WL 1876973, at *6 (W.D. Mich. July 5, 2006) (dismissing equal protection claim "that prisoners whose victims oppose parole are denied parole more often than those prisoners whose victims do not oppose parole" as conclusory, due to plaintiff's failure to allege sufficient facts about comparators who were granted parole) (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)).

3. Other Claims

The plaintiff raises claims based on the haste with which the Board decides individual cases in light of its heavy caseload, the procedures in place for hearing and determining such cases, and various ways in which the Board fails properly to consider factors applicable to the determination (Doc. No. 1 at 12–14, 17–18), "in some instances . . . focus[ing] exclusively on the nature of the prisoner's crime in making parole decisions." (*Id.* at 15.) He claims that these actions and inactions are largely insulated from independent appellate review and violate state statutory law concerning the structure, function, and operation of the Board; that they deny due process to parole-eligible inmates; and, that they amount to deliberate indifference to the rights of those inmates. (*Id.* at 17–19.)

These allegations and claims do not support any right to relief under federal law. As mentioned above, there is no federal right to release on parole, nor do Tennessee inmates have any

state-created liberty interest in parole that would support a procedural due process claim. *See Swatzell*, 2019 WL 1533445, at *4 (citing cases). The plaintiff cites cases from outside the Sixth Circuit for the proposition that parole denials based solely on the seriousness of the offense do not comport with due process. (*See* Doc. No. 1 at 15–16.) However, "although other circuits have found that arbitrary parole denials may nevertheless violate a plaintiff's substantive due process rights, 'the reasoning on which these cases are based has not been adopted in this circuit.'" *Sturgis v. Michigan Parole Bd.*, No. 18-1554, 2019 WL 2156429, at *1 (6th Cir. Feb. 1, 2019) (quoting *Bell v. Anderson*, 301 F. App'x 459, 462 (6th Cir. 2008) (per curiam) (holding that, even accepting that an arbitrary denial by parole board exercising its discretion could in principle violate substantive due process guarantee, denial based on seriousness of the offense is "an altogether routine call" that "cannot be described as 'arbitrary and capricious'" or conscience-shocking "even though it might appear to be essentially unfair")). In the Sixth Circuit, "[d]ue process in parole proceedings is satisfied as long as the procedure used affords the inmate an opportunity to be heard, and, if parole is denied, the Parole Board informs the inmate of the basis upon which it denied parole." *Wortman v. Tennessee*, No. 3:20-cv-00156, 2020 WL 1666601, at *3 (M.D. Tenn. Apr. 3, 2020) (citing *Seagroves*, 86 F. App'x at 48). Because the plaintiff does not claim that he was denied these basic procedural requirements, he "has no due process claims based on the parole hearing itself, the process leading up to his parole hearing, or the denial of his parole—no matter how improper or unfair they all allegedly were." *Id.*; *see also Boyd*, 2019 WL 295087, at *4 (finding that even "reliance on false information in a parole hearing does not constitute a violation of due process rights" and that no relief could be granted based on illegal, fraudulent, or arbitrary action of Tennessee Parole Board) (citing cases).

15

Nor are the plaintiff's appeals to Eighth Amendment guarantees and standards availing. "[A] denial of parole from an underlying valid sentence does not implicate the Eighth Amendment." *Tatum v. Chappell*, No. CV 14-9965 DDP AJW, 2015 WL 1383516, at *3 (C.D. Cal. Mar. 24, 2015) (citing, *e.g.*, *Johnson v. Finn*, 468 F. App'x 680, 684 (9th Cir. 2012)). In arguing that his parole denials after hearings which largely focused on opposition from victims of his juvenile offense have left him without "a meaningful opportunity for release" (Doc. No. 1 at 9), the plaintiff evokes the rule of *Graham v. Florida*, 560 U.S. 48 (2010), "where the Supreme Court held that the Eighth Amendment requires that juvenile offenders convicted of non-homicide offenses sentenced to life in prison for non-homicide crimes have a meaningful chance to obtain parole." *Wershe v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014); *see Swatzell*, 2019 WL 1533445, at *4, 5–6 (discussing series of cases beginning with *Graham* and allowing amended complaint to fully articulate an Eighth Amendment claim under *Graham*, which Swatzell "may be able to state" since he "commit[ed] the offenses for which he has been incarcerated at the age of sixteen"). But the plaintiff is not a juvenile offender convicted of a non-homicide offense, as discussed above, and therefore cannot assert an Eighth Amendment claim based on the narrow circumstances presented in *Graham* and its progeny.

As the Complaint contains no viable federal claims, the court in its discretion declines to exercise supplemental jurisdiction over the plaintiff's state law claims and will dismiss those claims without prejudice. *See Chaplin v. Anderson*, No. 19-1506, 2020 WL 2192553, at *4 (6th Cir. Feb. 20, 2020) (finding no abuse of discretion in district court's decision to decline to exercise supplemental jurisdiction over prisoner's state law claims following screening dismissal of all federal claims) (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009)).

## II. Conclusion

In sum, the Complaint in this case fails to state any viable claim to relief under Section 1983. Accordingly, this action will be dismissed pursuant to 28 U.S.C. § 1915A, for failure to state a claim upon which relief can be granted. The plaintiff's claims of violations of Tennessee law will be dismissed without prejudice to his right to pursue them in state court.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge